ROB BONTA
Attorney General of California
R. MATTHEW WISE
Supervising Deputy Attorney General
S. CLINTON WOODS
Deputy Attorney General
State Bar No. 246054
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 510-3807
  Fax: (415)703-5408
  E-mail: Clint.Woods@doj.ca.gov
*Attorneys for Rob Bonta, in his official capacity as California Attorney General, and Blake Graham, in his official capacity as Acting Director of the Department of Justice Bureau of Firearms*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| **DEFENSE DISTRIBUTED,**<br><br>Plaintiff,<br><br>v.<br><br>**ROB BONTA, in his official capacity as Attorney General of California; and BLAKE GRAHAM[1], in his official capacity as Acting Director of the Department of Justice Bureau of Firearms,**<br><br>Defendants. | 2:22-cv-06200-GW-AGR<br><br>**DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:        October 24, 2022<br>Time:        8:30 a.m.<br>Dept:        9D<br>Judge:       Hon. George H. Wu<br>Trial Date:  None set<br>Action Filed: August 31, 2022 |

---

[1] Blake Graham is hereby substituted for former Bureau of Firearms Director Luis Lopez. See Fed. R. Civ. P. 25(d).

1

Defendants' Opposition to Mtn. For Prelim. Injunction (2:22-cv-06200-GW-AGR)

# **TABLE OF CONTENTS**

**Page**

Introduction.................................................................................................... 1

Background..................................................................................................... 3

    I.     Senate Bill 1327 ................................................................ 3

    II.    The ATF's Final Rule Regulating Ghost Guns ................. 3

    III.   Assembly Bill 1621.......................................................... 5

    IV.   Procedural Background..................................................... 7

Legal Standard ............................................................................................... 8

Argument ....................................................................................................... 9

    I.     The Court Should Deny Plaintiff's Motion to Enjoin
           Enforcement of Senate Bill 1327 ..................................... 9

    II.    Plaintiff Is Not Entitled to Injunctive Relief Related to
          Assembly Bill 1621's Prohibition of CNC Milling Machines or
          Serialization Requirements ............................................. 11

         A.    Plaintiff Has Failed to Show It Is Likely to Succeed on
                the Merits of Its Second Amendment Challenge..................... 11

              1.    The Supreme Court's Decision in Bruen ..................... 11

              2.    The CNC Milling Machine Prohibition Does Not
                   Regulate Conduct Protected by the Plain Text of
                   the Second Amendment ................................................ 13

              3.    The Other Challenged Provisions of AB 1621 Do
                   Not Prevent the People from Bearing Arms ................. 15

              4.    The Constitutionality of AB 1621 Is Supported by
                   Bruen and Other Relevant Authority ............................ 16

              5.    Defendants Must Be Allowed to Compile a
                   Complete Historical Record .......................................... 18

         B.    Plaintiff Has Not Established Irreparable Harm..................... 20

         C.    The Balance of the Equities and Public Interest Weigh
                 Strongly Against Injunctive Relief ........................................... 21

Conclusion ................................................................................................... 23

i

Defendants' Opposition to Mtn. For Prelim. Injunction (2:22-cv-06200-GW-AGR)

# TABLE OF AUTHORITIES

**Page**

CASES

*Alvarez v. Larose*
    445 F. Supp. 3d 861 (S.D. Cal. 2020) ............................................................ 8

*Andrews v. State*
    50 Tenn. 165 (1871) ........................................................................................ 16

*Bauer v. Becerra*
    858 F.3d 1216 (9th Cir. 2017) ....................................................................... 17

*California v. Azar*
    911 F.3d 558 (9th Cir. 2018) ........................................................................... 8

*Caribbean Marine Serv. Co., Inc. v. Baldrige*
    844 F2d 668 (9th Cir. 1988) .......................................................................... 10

*District of Columbia v. Heller*
    554 U.S. 570 (2008) ............................................................................... 13, 17

*District of Columbia v. Heller*
    670 F.3d 1244, 1275 (D.C. Cir. 2011) ......................................................... 18

*Drakes Bay Oyster Co. v. Jewell*
    747 F.3d 1073 (9th Cir. 2014) ......................................................................... 8

*Ezell v. City of Chicago*
    651 F.3d 684 (7th Cir. 2011) .................................................................. 14, 16

*Illinois Ass'n of Firearms Retailers v. City of Chicago*
    961 F. Supp. 2d 928 ....................................................................................... 16

*Jackson v. City & Cty. of San Francisco*
    746 F.3d 953 (9th Cir. 2014) .................................................................. 14, 17

*Lee v. City of Los Angeles*
    250 F.3d 668 (9th Cir. 2001) ......................................................................... 18

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ....................................................................................... 10

ii

# TABLE OF AUTHORITIES
## (continued)

Page

*Maryland v. King*
 133 S. Ct. 1 (2012) (Roberts, C.J., in chambers) ................................. 22

*McDonald v. City of Chicago*
 561 U.S. 742 (2010) ................................................................... 13, 17

*Miller v. Becerra*
 No. 3:19-cv-1537-BEN-JLB (S.D. Cal. Aug. 29, 2022) .................................... 19

*New York State Rifle & Pistol Association, Inc. v. Bruen*
 142 S. Ct.2111 (2022) ................................................................ *passim*

*Nken v. Holder*
 556 U.S. 418 (2009) ...................................................................... 21

*Thomas v. Anchorage Equal Rts. Comm'n*
 220 F.3d 1134 (9th Cir. 2000) (en banc) ..................................... 10, 11

*Tingley v. Ferguson*
 No. 21-35815, 2022 WL 4076121 (9th Cir. Sept. 6, 2022) .............................. 10

*Winter v. Natural Res. Def. Council, Inc.*
 555 U.S. 7 (2008) ..................................................................... *passim*

**CONSTITUTIONAL PROVISIONS**

United States Constitution
 Article III ............................................................................ 10, 11
 Second Amendment.................................................................... *passim*
 Fourteenth Amendment .................................................................... 19

**STATUTES**

United States Code, Title 18
 § 921(a)(3) .................................................................................... 4
 § 921 et seq. ................................................................................. 4

United States Code, Title 48
 § 1983 ......................................................................................... 9

iii

Defendants' Opposition to Mtn. For Prelim. Injunction (2:22-cv-06200-GW-AGR)

# TABLE OF AUTHORITIES
## (continued)

Page

Assembly Bill
 1621 ....................................................................................5, 11
 1621 § 1(a) ......................................................................7, 21, 22
 1621 § 1(a)(2) ............................................................................21
 1621 § 1(a)(2)-(4) ....................................................................5, 7
 1621 § 1(a)(4) ............................................................................21
 1621 § 1(a)(5) ..............................................................................7
 1621 § 1(a)(9) ..............................................................................7
 1621 § 41 ......................................................................................7

Senate Bill 1327 § 2 ................................................................3, 9, 11

California Civil Procedure Code
 § 1021.11(a) ................................................................................3
 § 1021.11(b) ................................................................................3
 § 1021.11(c) ................................................................................3
 § 1021.11(e) ................................................................................3

California Penal Code
 § 18010(d) ..................................................................................15
 § 18010(f) ....................................................................................6
 § 27530(a) ..............................................................................6, 15
 § 29180 ........................................................................................15
 § 29180(f) ..............................................................................6, 15
 § 29185 ..........................................................................................6
 § 29185(d)(3) ................................................................................7
 § 30400 ..................................................................................6, 15

**REGULATIONS**

Code of Federal Regulations, Title 27
 pt. 447 ..........................................................................................5
 pt. 478 ..........................................................................................5
 pt. 479 ..........................................................................................5

iv

# TABLE OF AUTHORITIES
## (continued)

**Page**

Federal Registers 87

24652 .................................................................................................................. 5

24656 .................................................................................................................. 4

24659 .................................................................................................................. 5

24662 .................................................................................................................. 4

24735 .................................................................................................................. 5

24739 .................................................................................................................. 5

24741-42 ............................................................................................................. 5

**COURT RULES**

Federal Rule of Evidence

201(b)(2) ............................................................................................................ 18

Defendants' Opposition to Mtn. For Prelim. Injunction (2:22-cv-06200-GW-AGR)

**INTRODUCTION**

Plaintiff Defense Distributed seeks to enjoin Defendants from enforcing the attorneys' fees shifting provision of Senate Bill (SB) 1327 and provisions of Assembly Bill (AB) 1621 regulating precursor gun parts and prohibiting certain machinery—known as computer numerical control (CNC) milling machines—used to manufacture "ghost guns," unserialized and untraceable firearms typically self-assembled at home.  Yet Plaintiff must satisfy a heavy burden to show that it is entitled to extraordinary injunctive relief.  It has not done so here.

With respect to SB 1327, Defendants have informed Plaintiff that they will not seek attorneys' fees or costs from Plaintiff or its attorneys pursuant to that provision in connection with this action.  Declaration of S. Clinton Woods ("Woods Decl.") at ¶ 3.  Defendants offered Plaintiff a stipulation to that effect.  *Id.* at ¶ 4 and Exh. 1.  Despite Defendants' several attempts to follow up, Plaintiff's attorney has not yet substantively responded to Defendants' offer.  *Id.* at ¶ 5-6.  Nevertheless, by way of this filing, Defendants inform the Court and Plaintiff on the record that they will not seek attorneys' fees pursuant to SB 1327.  Plaintiff has no risk of liability for attorneys' fees under SB 1327 in connection with this case.  That eliminates any threat of injury and injunctive relief should be denied.

This Court should deny Plaintiff's motion with respect to its Second Amendment challenge to AB 1621.  Plaintiff has not shown that its challenge to AB 1621 is likely to succeed on the merits.  In *New York State Rifle & Pistol Association, Inc. v. Bruen*, __ U.S. __, 142 S.Ct. 2111 (2022), the Supreme Court set forth a new analytical framework for Second Amendment claims.  A court must initially assess whether the "Second Amendment's plain text covers" the regulated conduct, 142 S. Ct. at 2126—in other words, whether the regulation at issue prevents any "People" from "keep[ing]" or "bear[ing]" "Arms."  Only if the regulation implicates the Second Amendment's plain text must a court then

1

Defendants' Opposition to Mtn. For Prelim. Injunction (2:22-cv-06200-GW-AGR)

1 | determine whether the law is nevertheless "consistent with the Nation's historical
2 | tradition of firearm regulation." *Id.* at 2133.

3 | Here, the *Bruen* analysis ends at the initial textual examination.  First, AB
4 | 1621's regulation of CNC milling machines does not implicate the Second
5 | Amendment because its plain text does not cover those machines.  Such devices are
6 | not "bear[able]" and are not "Arms"—they are 42-pound mechanical boxes that
7 | connect to laptop computers and operate to turn gun parts into operable firearms.
8 | Nor does AB 1621's prohibition of CNC milling machines impede Plaintiff's
9 | ability to "keep" or "bear" any lawful arms.  AB 1621 therefore does not implicate
10 | Plaintiff's Second Amendment rights under *Bruen*.  Second, AB 1621's
11 | serialization requirements for precursor gun parts do not burden anyone's right to
12 | own, sell, acquire, or even manufacture their own arms.  Rather, AB 1621 simply
13 | requires the serialization of precursor gun parts that are owned, sold, or eventually
14 | manufactured into a usable firearm—just as federal law requires finished firearms
15 | to be serialized.

16 | Even if the Court were to conclude that AB 1621 does implicate the text of the
17 | Second Amendment, Plaintiff would not inevitably be entitled to relief.  The
18 | historical analysis that *Bruen* contemplates would require time for Defendants to
19 | develop the record to establish that AB 1621 is "consistent with the Nation's
20 | historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2133.  And in any
21 | event, relief is not warranted because Plaintiff has failed to establish the remaining
22 | requirements of injunctive relief; it cannot show irreparable harm absent an
23 | injunction or that the balance of equities and public interest weigh in its favor.
24 | Indeed, the California Legislature passed AB 1621 to address a serious problem—
25 | the massive proliferation of ghost guns that has contributed to a surge in gun
26 | deaths, particularly among young people in vulnerable communities.  A.B. 1621,
27 | § 1(a)(2)–(4).

28 | The Court should deny Plaintiff's Motion for Preliminary Injunction.

**BACKGROUND**

## I.   SENATE BILL 1327

SB 1327 was signed into law by Governor Newsom on July 22, 2022, but it does not take effect until January 1, 2023.   *See* S.B. 1327 (2021-2022 Reg. Sess.). While the bill has other components, Plaintiff challenges SB 1327's fee-shifting provision, which provides that "any person, including an entity, attorney, or law firm, who seeks declaratory or injunctive relief to prevent this state, a political subdivision, a governmental entity or public official in this state, or a person in this state from enforcing any statute, ordinance, rule, regulation, or any other type of law that regulates or restricts firearms, or that represents any litigant seeking that relief, is jointly and severally liable to pay the attorneys' fees and costs of the prevailing party." S.B. 1327, § 2 (Cal. Civ. Proc. Code § 1021.11(a)).  Prevailing parties may seek costs and fees within three years of the date when the dismissal or denial of a claim becomes final on appellate review or when the time for seeking appellate review expires. *Id.*  (Cal. Civ. Proc. Code § 1021.11(c)).

A party is a "prevailing party" if the court dismisses any claim or enters judgment in favor of the party opposing the declaratory or injunctive relief. *Id.* (Cal. Civ. Proc. Code § 1021.11(b)).  Only defendants may be deemed a prevailing party. *Id.* (Cal. Civ. Proc. Code § 1021.11(e)).

## II.   THE ATF'S FINAL RULE REGULATING GHOST GUNS

Since 1968, federal law, starting with the Gun Control Act (GCA), has imposed important, commonsense gun safety restrictions on the purchase and sale of firearms in the United States.  Gun Control Act of 1968, Pub. L. No. 90-618 (1968).  The GCA's major provisions include: (i) a ban on sales of guns to people convicted of felonies, people addicted to drugs, minors, and individuals with serious mental illnesses; (ii) a requirement that all firearms dealers obtain a federal firearms license; (iii) a prohibition on the importation of firearms "with no sporting

3

purpose"; and (iv) a mandate that all firearms be serialized.  18 U.S.C. §§ 921 et seq.

To effectuate the GCA's goals of aiding law enforcement by preventing prohibited purchasers from obtaining guns, the GCA regulates the possession and purchase of "firearms."  "Firearms" are broadly defined to include not only fully functional weapons that "expel [] projectile[s] by the action of an explosive," but also items that are "designed to or may readily be converted" into fully functional weapons, and the "receiver" or "frame" of such weapons.  18 U.S.C. § 921(a)(3).  A firearm frame or receiver is the part of the firearm that houses the hammer, bolt, or breechblock, as well as the firing mechanism.[2]

In the past few years, the ghost gun industry has exploded, driven in large part by the online sale of weapon parts kits.  87 Fed. Reg. at 24662.  These user-friendly kits typically contain nearly complete firearms parts and require a minor amount of assembly to become fully functional weapons.  *Id.*  As these firearms kits proliferated, so too have self-made, unserialized guns.  Law enforcement officers nationwide recovered approximately 1,700 self-made guns in 2016; they recovered over 19,000 in 2021, an eleven-fold increase.  87 Fed. Reg. at 24656.  Altogether, officers recovered about 45,240 self-made guns during that five-year period—more than 40 percent of which were recovered in 2021 alone.  87 Fed. Reg. at 24656.

The rise of these kits revealed two problems.  First, a person explicitly banned from gun possession under the GCA could still buy a kit and assemble a fully functional gun within hours.  *See* Cal. Assem. Comm. on Public Safety, Analysis of AB 1621, at p. 7 (Apr. 19, 2022).[3]  Second, because the finished product was unserialized, officers could not track the gun if it was later used in a crime.  *Id.*

---

[2] *Gun Control Act Definitions – Firearm*, Bureau of Alcohol, Tobacco, Firearms and Explosives, https://www.atf.gov/firearms/firearms-guides-importation-verification-firearms-ammunition-gun-control-act-definitions (last viewed Sept. 28, 2022).

[3] Available online at https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=202120220AB1621 (last viewed Sept. 29, 2022).

4

1   Indeed, of the 45,240 suspected ghost guns recovered nationwide from 2016 to

2   2021, only 445 could be traced—a less than one percent success rate.  87 Fed. Reg.

3   at 24659.

4       On April 11, 2022, the Federal Bureau of Alcohol, Tobacco, and Firearms

5   (ATF) issued a final rule titled "Definition of 'Frame or Receiver' and

6   Identification of Firearms," which was then published in the Federal Register on

7   April 26, 2022.  *See* Definition of "Frame or Receiver" and Identification of

8   Firearms, 87 Fed. Reg. 24652, codified at 27 C.F.R. pts. 447, 478 and 479 (Final

9   Rule).  The Final Rule attempts to address these issues by clarifying how the

10  GCA's key terms will be enforced.  First, the Rule explicitly includes weapon parts

11  kits in its definition of "firearm":

12      "*Firearm.*  Any weapon, including a starter gun, which will or is
       designed to or may readily be converted to expel a projectile by the
13     action of an explosive; the frame or receiver of any such weapon . . . .
       The term shall include a weapon parts kit that is designed to or may
14     readily be completed, assembled, restored, or otherwise converted to
       expel a projectile by the action of an explosive."
15

16  87 Fed. Reg. at 24735.

17      Second, the Rule clarifies that a partially complete frame or receiver, or a

18  frame or receiver kit, is a "frame" or "receiver" under the GCA if it can be readily

19  converted to function as such.  87 Fed. Reg. at 24739.  Third, the Rule defines

20  "privately manufactured firearm" and "readily" for the first time.  87 Fed. Reg. at

21  24735.  And fourth, the Rule provides detailed instructions on how and when

22  licensees must mark firearms.  87 Fed. Reg. at 24741-42; *see also* 87 Fed. Reg. at

23  24735.

24  **III.  ASSEMBLY BILL 1621**

25      On June 30, 2022, in a further effort to address the prevalence of ghost guns,

26  Governor Gavin Newsom signed Assembly Bill 1621, amending several sections of

27  the California Penal Code concerning the manufacture, sale, and possession of

28  precursor gun parts and ghost guns.  A.B. 1621 at § 1, (2021-2022 Reg. Sess.).

5

Among other things, AB 1621 prohibits any persons in the State of California, other than federally-licensed firearms manufacturers or importers, from using, possessing, selling, or transferring a CNC milling machine that has a sole or primary purpose of manufacturing firearms.  *Id.* at § 25; Cal. Pen. Code § 29185. CNC milling machines can be used in a variety of contexts and are complex machines that employ computerized controls to rotate cutting and milling tools to progressively remove material from unfinished wood, metal, glass, or plastic to produce a customizable product.[4]  However, when sold in conjunction with precursor gun parts or for the primary purpose of manufacturing firearms, CNC milling machines sold by gun manufacturers such as Plaintiff allow individuals with "[n]o prior skill…" to "finish[] unserialized rifles and pistols in the comfort and privacy of home."[5]

Recognizing the passage of the ATF's Final Rule, AB 1621 amended California's provisions regulating precursor gun parts to prohibit individuals or entities from knowingly assembling or assisting with assembling an unserialized firearm.  Cal. Pen. Code § 29180(f).  The law prohibited the sale or transfer of ownership of unserialized guns or gun parts in the state.  Cal. Pen. Code §§ 27530(a), 30400.  AB 1621 also authorized the Attorney General, district attorneys, and city attorneys to bring an action to enjoin the sale, transfer, or importation of unserialized guns or gun parts into the state.  Cal. Pen. Code § 18010(f).  Notably, AB 1621 does not prohibit the sale, transfer, or possession of federally regulated precursor gun parts, nor do any of its provisions prohibit anyone from manufacturing their own firearms from federally regulated precursor gun parts.  *See generally* AB 1621.

---

[4] *See, e.g.*, https://www.thomasnet.com/articles/custom-manufacturing-fabricating/understanding-cnc-milling/ (last viewed Sept. 28, 2022).

[5] https://ghostgunner.net/ (last viewed Sept. 28, 2022).

In enacting AB 1621, the Legislature recognized that the massive proliferation of unserialized firearms known as "ghost guns" and materials to complete them have led to an increase in gun deaths in California, particularly among young people in vulnerable communities. *Id.* at § 1(a)(2)-(4). Ghost guns have become "a leading source of crime guns, including firearms built by people such as minors who cannot legally possess or acquire firearms in our state, as well as individuals seeking to conceal their involvement in firearm trafficking and other crimes." *Id.* at § 1(a)(5). The manufacture and sale of unregulated and unserialized firearms has furthermore "caused enormous harm and suffering, hampered the ability of law enforcement to trace crime guns and investigate firearm trafficking and other crimes, and dangerously undermined the effectiveness of laws and protections critical to the health, safety, and well-being of Californians." *Id.* at § 1(a). AB 1621, including the CNC milling machine prohibition, was therefore enacted to ensure that "firearm precursor parts may only be sold if they are regulated under federal law to the same extent as completed frames and receivers . . . ." *Id.* at § 1(a)(9).

AB 1621 contains an urgency clause stating that it "shall go into immediate effect." *Id.* at § 41. Other than federally-licensed firearm manufacturers or importers, individuals who owned or possessed CNC milling machines with the sole or primary purpose of manufacturing firearms were given 90 days from the enactment of AB 1621 to legally sell, remove, transfer, or surrender their machines. Cal. Pen. Code § 29185(d)(3).

## IV. PROCEDURAL BACKGROUND

Plaintiff filed this action on August 31, 2022. ECF No. 1. On September 21, 2022, Plaintiff filed an amended complaint, removing the Second Amendment Foundation as a Plaintiff but asserting the same causes of action. ECF No. 13 (FAC).

7

Defendants' Opposition to Mtn. For Prelim. Injunction (2:22-cv-06200-GW-AGR)

On September 23, 2022, Plaintiff filed its Motion for Preliminary Injunction, noticing the motion for hearing on October 24, 2022.  ECF No. 14.  The motion is not accompanied by any declarations or any other type of admissible evidence. Plaintiff provided virtually no notice before filing the motion and refused a request to meet and confer about a briefing schedule.  Woods Decl. at ¶ 2.

On September 26, 2022, Defendants' counsel contacted Plaintiff's counsel by phone to offer to stipulate not to seek fees under SB 1327 in exchange for dismissing those claims.  *Id*. at ¶ 3.  The same day, Defendants' counsel emailed Plaintiff's counsel a draft stipulation.  *Id*. at ¶ 4.  Despite repeated requests for a response, Plaintiff's counsel has not taken a position on the stipulation.  *Id*. at ¶¶ 5-6.

## LEGAL STANDARD

Injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Alvarez v. Larose*, 445 F. Supp. 3d 861, 865 (S.D. Cal. 2020) (quoting *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008)).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20.  "When the government is a party, these last two factors," balance of the equities and public interest, "merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).  Analysis of the first factor (i.e., likelihood of success on the merits) is a "threshold inquiry," and thus if a movant fails to establish that factor, the court "need not consider the other factors." *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018).

8

Defendants' Opposition to Mtn. For Prelim. Injunction (2:22-cv-06200-GW-AGR)

**ARGUMENT**

**I.    THE COURT SHOULD DENY PLAINTIFF'S MOTION TO ENJOIN ENFORCEMENT OF SENATE BILL 1327**

This Court should deny Plaintiff's request for injunctive relief related to SB 1327's fee-shifting provision because Plaintiff faces no threat that Defendant will choose to avail itself of that provision in connection with this litigation. Accordingly, Defendants' agreement not to seek fees gives Plaintiff all relief sought by the second, third, and fourth causes of action in the FAC regarding SB 1327. *See, e.g.*, FAC at ¶ 95 ("Because SB 1327 § 2 violates Plaintiff's rights under the First and Fourteenth Amendments…"); ¶ 105 ("Because SB 1327 § 2 deprives Plaintiff of the right to equal protection under the law secured by the Fourteenth Amendment…"); ¶ 108 ("Because SB 1327 § 2 is preempted by 48 U.S.C. § 1983, Plaintiff is entitled to declaratory and preliminary and permanent injunctive relief."); p. 23 (praying for an order "[p]ermanently and preliminarily enjoining Defendants and their employees and agents from seeking attorneys' fees pursuant to SB 1327 § 2.").

Since Plaintiff filed its motion, Defendants have repeatedly attempted to confer with Plaintiff's counsel about SB 1327 fees.  Woods Decl. at ¶ 3-4 and Exh. 1.  Defendants have informed Plaintiff that they will not seek attorneys' fees or costs from Plaintiff or its attorneys pursuant to SB 1327's fee-shifting provision in connection with this action.  *Id*.  Defendants have offered to enter into a written stipulation to finalize this agreement and will file it as soon as practicable, after receiving input and assent from the Plaintiff.  *Id*. at ¶ 7.

As a result, Plaintiff may pursue this action without risk of being made to pay attorneys' fees or costs under SB 1327.  An injunction is therefore not proper

Defendants' Opposition to Mtn. For Prelim. Injunction (2:22-cv-06200-GW-AGR)

1  because, without a risk of injury, Plaintiff cannot establish two of the *Winter*

2  factors.[6]

3      First, Plaintiff cannot establish that, absent a preliminary injunction, it would

4  suffer irreparable harm.  *See Winter*, 555 U.S. at 20; *see also Caribbean Marine*

5  *Servs. Co., Inc. v. Baldrige* (9th Cir. 1988) 844 F2d 668, 674 (threat of irreparable

6  harm must be "immediate").  Because Defendants have agreed not to seek

7  attorneys' fees and costs under the fee-shifting provision of SB 1327 in connection

8  with this action, Plaintiff is under no threat of harm.

9      Second, without the risk of injury, Plaintiff cannot establish Article III

10  standing to seek relief.  *See Winter*, 555 U.S. at 20.  Article III standing requires

11  plaintiffs to show an actual or imminent "injury-in-fact" that is, among other things,

12  "fairly traceable" to the complained of conduct.  *Lujan v. Defenders of Wildlife*, 504

13  U.S. 555, 560 (1992).  Given Defendants' agreement not to seek fees under SB

14  1327, there is no actual or imminent injury traceable to Defendants.  "[N]either the

15  mere existence of a proscriptive statute nor a generalized threat of prosecution

16  satisfies the 'case or controversy' requirement" of Article III.  *Thomas v.*

17  *Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).

18  Courts consider three factors to determine whether a threat of enforcement "is

19  genuine enough to confer an Article III injury":  "(1) whether the plaintiff has a

20  'concrete plan' to violate the law, (2) whether the enforcement authorities have

21  'communicated a specific warning or threat to initiate proceedings,' and (3)

22  whether there is a 'history of past prosecution or enforcement.'"  *Tingley v.*

23  *Ferguson*, No. 21-35815, 2022 WL 4076121, at *6 (9th Cir. Sept. 6, 2022) (quoting

24  *Thomas*, 220 F.3d at 1139).

25

26

27      [6] Although we do not expect Plaintiff to continue to seek injunctive relief related to SB 1327 in light of the Defendants' offered stipulation as to those claims, in an abundance of caution, Defendants explain below why injunctive relief related

28  to SB 1327 would not be proper.

1    Plaintiff cannot satisfy Article III standing because Defendants have stated on

2    the record that they will not seek fees pursuant to SB 1327.  *Thomas*, 220 F.3d at

3    1139.  Defendants have not merely refrained from communicating to Defendants

4    any "specific warning" or "threat to initiate proceedings," they have gone further—

5    they have affirmatively stated that they will not use SB 1327's fee-shifting

6    provision against Plaintiff or its attorneys in connection with this action.  Plaintiff

7    cannot proffer any evidence that Defendants have or will make use of section 2 of

8    SB 1327 in connection with this case.  Plaintiff thus lacks the injury-in-fact

9    necessary for Article III standing.

10        The Court should deny all requested injunctive relief related to SB 1327.

11   **II.   PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF RELATED TO
         ASSEMBLY BILL 1621'S PROHIBITION OF CNC MILLING MACHINES OR
12       SERIALIZATION REQUIREMENTS**

13        **A.   Plaintiff Has Failed to Show It Is Likely to Succeed on the
              Merits of Its Second Amendment Challenge**
14

15        Plaintiff is not likely to prevail on the merits because no Second Amendment

16   rights are implicated or burdened by the challenged AB 1621 provisions.

17                **1.   The Supreme Court's Decision in *Bruen***

18        In *Bruen*, as explained above, the Supreme Court announced a new framework

19   for analyzing Second Amendment claims.  In lieu of the "two-step test" that this

20   Court and most other federal courts of appeals had adopted for resolving those

21   claims, *Bruen* held that courts must apply a standard "rooted in the Second

22   Amendment's text, as informed by history."  *Bruen*, 142 S. Ct. at 2127.  The Court

23   also provided important guidance about how that test should be applied.  *See id.* at

24   2131-34.  In rejecting the two-step framework, the Supreme Court directed courts

25   to scrutinize Second Amendment claims by applying a "methodology centered on

26   constitutional text and history."  *Id.* at 2128-29.  Under the new approach, courts

27   must initially assess whether the "Second Amendment's plain text covers" the

28   regulated conduct.  *Id.* at 2129.  If the answer is no, there is no violation of the

11

1    Second Amendment.  If the answer is yes, the government can still justify its

2    regulation—and overcome a constitutional challenge—by showing that the

3    challenged law is "consistent with the Nation's historical tradition of firearm

4    regulation." *Id.* at 2130.

5         In some cases, *Bruen* provides that this historical inquiry will be "fairly

6    straightforward," such as when a challenged law addresses a "general societal

7    problem that has persisted since the 18th century."  *Bruen*, 142 S. Ct. at 2131.  But

8    in others—particularly those where the challenged laws address "unprecedented

9    societal concerns or dramatic technological changes"—this historical analysis

10   requires a "more nuanced approach." *Id.* at 2132.  Governments can justify

11   regulations of that sort by "reasoning by analogy," a process that requires the

12   government to show that its regulation is "'relevantly similar'" to a "well-

13   established and representative historical analogue." *Id.* at 2333 (citation and

14   emphasis omitted).  And while the Court did not "provide an exhaustive survey of

15   the features that render regulations relevantly similar under the Second

16   Amendment," it did identify "two metrics:  how and why the regulations burden a

17   law-abiding citizen's right to armed self-defense." *Id.*

18        While *Bruen* announced a new rubric for analyzing Second Amendment

19   claims, it also made clear that governments may continue to adopt reasonable gun

20   safety regulations.  The Court recognized that the Second Amendment is not a

21   "regulatory straightjacket." *Id.* at 2133.  Nor is it a right to "keep and carry any

22   weapon whatsoever in any manner whatsoever and for whatever purposes." *Id.* at

23   2128 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008)).  And

24   Justice Kavanaugh—joined by Chief Justice Roberts—wrote separately to

25   underscore the "limits of the Court's decision." *Id.* at 2161 (Kavanaugh, J.,

26   concurring).  Justice Kavanaugh reiterated *Heller*'s observation that "the Second

27   Amendment allows a 'variety' of gun regulations." *Id.* at 2162 (quoting *Heller*, 554

28   U.S. at 636).  And he emphasized that the "presumptively lawful measures" that

1   *Heller* identified—including "longstanding prohibitions on the possession of

2   firearms by felons and the mentally ill," laws "forbidding the carrying of firearms

3   in sensitive places," laws "imposing conditions and qualifications on the

4   commercial sale of arms," and laws prohibiting the keeping and carrying of

5   "dangerous and unusual weapons"—remained constitutional, and that this was not

6   an "exhaustive" list. *Id.* at 2162 (quoting *Heller*, 554 U.S. at 626-627, 627 n.26).[7]

7       **2.   The CNC Milling Machine Prohibition Does Not Regulate
             Conduct Protected by the Plain Text of the Second
8            Amendment**

9       Under the new approach laid out in *Bruen*, courts must first assess whether the

10  "Second Amendment's plain text covers" the regulated conduct, 142 S. Ct.

11  at 2126—in other words, whether the regulation at issue prevents any "People"

12  from "keep[ing]" or "bear[ing]" "Arms."  The "People" who have the right to keep

13  and bear arms are "law-abiding, adult citizens."  *See Bruen*, 142 S. Ct. at 2134.

14  Defendants have no reason to dispute that an individual who seeks to own a CNC

15  milling machine with the sole or primary purpose of manufacturing firearms would

16  be part of "the People."  But Plaintiff has not and cannot satisfy its burden of

17  showing that AB 1621's regulation of certain milling machines prevents anyone

18  from keeping or bearing arms of any sort.

19      Indeed, AB 1621's CNC milling machine prohibition imposes *no* burden on

20  the right to keep and bear arms because the plain text of the Second Amendment

21  does not address the ownership of CNC milling machines at all.  Stated differently,

22  the Second Amendment's plain text does not "cover[]" the possession, sale, or

23  manufacture of machines that are neither "bearable," nor "arms" within the

24  ────────────────

25      [7] *See also Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) ("Our holding
    decides nothing about who may lawfully possess a firearm or the requirements that
26  must be met to buy a gun.  Nor does it decide anything about the kinds of weapons
    that people may possess.  Nor have we disturbed anything that we said in *Heller* or
27  *McDonald* . . . about restrictions that may be imposed on the possession or carrying
    of guns."); *accord McDonald*, 561 U.S. at 785 (the Second Amendment "by no
28  means eliminates" state and local governments' "ability to devise solutions to social
    problems that suit local needs and values").

meaning of the Second Amendment.  *See Bruen*, 142 S. Ct. at 2126; *see also id*. at 2132 ("...the Second Amendment extends, prima facie, to all bearable arms…").  Plaintiff has not presented any evidence that suggests that a CNC machine is bearable or is an arm.  On the contrary, it cannot reasonably be disputed that the product Plaintiff wants to continue to sell is a 42-pound mechanical box that connects to a laptop computer and operates by cutting and shaping gun parts so that they can be assembled into operable firearms.[8]  It is plainly not intended to be bearable, nor could someone "wear, bear, or carry [the CNC milling machine] . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person."  *Bruen*, 142. S. Ct. at 2134 (citing *Heller*, 554 U.S. at 584).  Similarly, the CNC milling machine is not an "Arm" within the meaning of the Second Amendment because the machine itself is not designed be used in an offensive or defensive action in case of conflict with another person.  *Id*.  Nor does the prohibition on possessing the machine "make it impossible to use firearms for their core purpose."  *Jackson v. City & Cty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) (challenge to city's ban on sales of certain ammunition); *cf. Ezell v. City of Chicago*, 651 F.3d 684 (7th Cir. 2011) (challenge to city ordinance mandating firing range training for gun ownership while prohibiting firing ranges within the city).

Plaintiff nevertheless argues that the CNC milling machine prohibition implicates the right of people to manufacture their own arms.  Mot. at 24.  But Plaintiff produces no authority that the right to own a machine used to manufacture one's own arms is encompassed by the plain text of the Second Amendment, which says nothing about "self-manufacture or assembly" of one's own firearms.  *Id*.; *see also* U.S. Const. amend. II.  There is simply no textual support or authority for

---

[8] https://ghostgunner.net/product/ghost-gunner-3-deposit/ (last viewed Sept. 23, 2022.)

Plaintiff's position that the plain meaning of the right to "keep and bear arms" under the Second Amendment also includes the right to "manufacture" or "assemble" a firearm, let alone the right to own any machine or machine part that could conceivably be used to manufacture a firearm.

### 3.    The Other Challenged Provisions of AB 1621 Do Not Prevent the People from Bearing Arms

Plaintiff's arguments concerning AB 1621's other provisions fare no better. Even if there were a constitutionally-protected right to manufacture a privately-made firearm—and there is not—AB 1621 does not prohibit the self-assembly of firearms.  Individuals may still lawfully purchase and assemble *federally regulated* precursor gun parts. *See, e.g.*, Cal. Pen. Code § 29180.  Plaintiff's arguments to the contrary are unsupported, and they are wrong.  Mot. at 24 ("Sections 30400, 27530(a), and 18010(d) all but prohibit citizens from acquiring the precursor materials needed to self-manufacture modern, commonly used firearms").  Plaintiff presents no evidence these provisions substantially or even minimally burden any individual's Second Amendment rights.  Nor can such evidence be produced, because AB 1621 does not prohibit anyone from acquiring federally regulated precursor gun parts and assembling their own firearms.

To be clear, individuals in California may still purchase, sell, offer to sell, and/or transfer federally regulated precursor gun parts, so long as the transactions satisfy the GCA and the ATF's Final Rule.  Cal. Pen. Code §§ 29180(f), 30400. Individuals are not prohibited from owning any firearm or federally regulated precursor part so long as those firearms or parts have been serialized by an authorized federal licensee.  Cal. Pen. Code § 27530(a).  Even if the Attorney General, district attorneys, and/or city attorneys were to enforce serialization requirements—and Plaintiff has not produced any evidence that such enforcement has occurred—individuals may still purchase federally regulated precursor gun parts and self-manufacture arms if they so choose.  Cal. Pen. Code § 18010(d).

15

1   Nothing in AB 1621's text or history suggests that it prohibits the self-manufacture
2   of firearms.  Plaintiff thus has not shown that AB 1621's requirements burden a
3   Second Amendment right.

### 4.   The Constitutionality of AB 1621 Is Supported by *Bruen* and Other Relevant Authority

6       Plaintiff's motion makes virtually no attempt to assert that Second
7   Amendment rights are burdened by AB 1621's requirements, instead the motion
8   relies on inapposite and distinguishable authority.  Plaintiff's brief reference to
9   *Ezell v. City of Chicago* is misplaced.  There, a local ordinance prohibited firing
10  ranges from operating at all, and also prohibited the discharging of weapons for any
11  purpose including for sport.  *Ezell,* 651 F.3d at 691.  Moreover, the city conditioned
12  firearm licensing on the applicant's range training.  *Id*. at 698.  In granting an
13  injunction against the firing range prohibition, the Seventh Circuit held that the
14  right to keep and bear arms also includes a corresponding right to "acquire [arms]
15  and maintain proficiency in their use." *Id*. at 704.  In *Illinois Association of*
16  *Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928 (N.D. Ill. 2014), a
17  district court similarly enjoined enforcement of an ordinance that banned the
18  transfer or sale of any firearm other than by inheritance because it prohibited the
19  vast majority of individuals from acquiring arms.  *Id*. at 936.

20      In marked contrast to the laws challenged in those cases, AB 1621's
21  prohibition on owning or selling CNC milling machines and its requirements to
22  serialize precursor gun parts do nothing to impinge on anyone's right to acquire
23  arms or to maintain proficiency with them.  Individuals may still self-manufacture
24  or assemble their own serialized firearms; they simply cannot use a CNC milling
25  machine with the primary purpose of assembling arms to do so.  Nor is the
26  Tennessee Supreme Court's decision to invalidate a total ban on the carrying of
27  pistols in *Andrews v. State*, 50 Tenn. 165, 178 (1871), persuasive.  AB 1621 is not a
28  blanket prohibition on owning precursor gun parts or making one's own weapons.

16

It merely applies the same serialization and background check requirements for every other firearm sold, transferred, or manufactured in California to self-made firearms.

The conclusion that Plaintiff's challenge fails as a textual matter is consistent with both the Supreme Court's Second Amendment precedents and the way the Court analyzes other constitutional rights. *Heller* and *McDonald* invalidated unusually "severe" restrictions that "totally ban[ned] handgun possession in the home." *Heller*, 554 U.S. at 628-629; *see also McDonald v. City of Chicago*, 561 U.S. 742, 750-751 (2010). Those laws "amount[ed] to a destruction of the Second Amendment right" to "keep" firearms for "the core lawful purpose of self-defense" by "law-abiding, responsible citizens." *Jackson*, 746 F.3d at 961 (quoting *Heller*, 554 U.S. at 629, 635). Similarly, the "proper cause" requirement challenged in *Bruen* made it "virtually impossible for most New Yorkers" "to carry a gun outside the home for self-defense," 142 S. Ct. at 2156 (Alito, J., concurring), and therefore effectively "nullif[ied] half of the Second Amendment's operative protections"— *i.e.*, the right to "bear" arms, *id.* at 2135. Unlike the law challenged in *Bruen*, which effectively operated as a prior restraint on the ability of most law-abiding citizens to "bear" "arms" outside the home, AB 1621 does nothing of the sort. Rather, the challenged law concerns only the possession or sale of machines that can be used to self-manufacture certain unserialized arms, and the serialization of federally regulated precursor gun parts. And like other regulations found to impose a minimal-to-nonexistent burden on Second Amendment rights, AB 1621 does not prevent someone from owning, bearing, or even purchasing federally regulated precursor gun parts for home manufacture. *See Bauer v. Becerra*, 858 F.3d 1216, 1222 (9th Cir. 2017) (a $19 fee on firearms transfers does not "ha[ve] any impact on the plaintiffs' actual ability to obtain and possess a firearm").

AB 1621 does not prevent law-abiding citizens from keeping or bearing arms of any sort. Accordingly, under *Bruen*, the burden does not shift to the government

17

Defendants' Opposition to Mtn. For Prelim. Injunction (2:22-cv-06200-GW-AGR)

1    to support the regulations with a historical analysis, and Plaintiff's Second

2    Amendment challenge fails at the threshold stage of the inquiry.

### 5. Defendants Must Be Allowed to Compile a Complete Historical Record

5    Even if the Court were to conclude that the text of the Second Amendment

6    applies to the ownership of CNC milling machines with the sole or primary purpose

7    of manufacturing firearms, or to the possession or sale of unserialized precursor gun

8    parts, Defendants can still defend AB 1621 by showing that it is "consistent with

9    the Nation's historical tradition of firearm regulation"—specifically that the law

10    imposes a "comparable burden on the right of armed self-defense" to the relevant

11    historical analogues and is "comparably justified." *Bruen*, 142 S. Ct. at 2133.  But

12    as *Bruen* itself acknowledged, that historical inquiry can be complex and difficult.

13    *Id.* at 2134.  If this Court determines that historical tradition is relevant in this case,

14    Defendants should be given the opportunity to compile historical evidence in a way

15    that is consistent with the Supreme Court's guidance in *Bruen*.  For its part,

16    Plaintiff has presented no admissible evidence on the historical question.[9]

17    If the Court were inclined to address the historical issue, it should not do so

18    based on Plaintiff's very limited submission prepared in the context of expedited

19    briefing.  For example, on the historical question, Defendants would need to show

20    that AB 1621 is "relevantly similar" to the pertinent historical analogue by

21    demonstrating that it imposes a "comparable burden on the right of armed self-

22    defense" to that historical predecessor and is "comparably justified." *Bruen*, 142 S.

23    Ct. at 2133.  That analysis requires the "more nuanced approach" required for laws

24    targeting "unprecedented societal concerns or dramatic technological changes." *Id.*

25    at 2132.  Indeed, as *Bruen* recognizes, "'applying constitutional principles to novel

---

26    [9] Plaintiff's own historical showing is limited to requesting judicial notice of a single law review article funded by gun rights advocates.  But a court may not take judicial notice of any matter in dispute, such as the accuracy or relevance of the historical events characterized in the article.  Fed. R. Evid. 201(b)(2); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001).

18

modern conditions can be difficult and leave close questions at the margins.'" *Id.* at 2134 (quoting *Heller v. District of Columbia*, 670 F.3d 1244, 1275 (D.C. Cir. 2011) (Kavanaugh, J., dissenting)).  In addition, *Bruen* left open other questions, including "whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope" or look to the "public understanding of the right to keep and bear arms" when the Second Amendment was ratified in 1791.  *Id.* at 2138; *see also id.* at 2162-2163 (Barrett, J., concurring) (highlighting "two methodological points that the Court does not resolve," including the "manner and circumstances in which post-ratification practice may bear on the original meaning of the Constitution").

Compiling such a historical record is no easy task.  It must be undertaken by trained historians through painstaking efforts just to identify the sources available to them in order to answer a particular historical inquiry.  *See* Declaration of Zachary Schrag, *Miller v. Becerra*, No. 3:19-cv-1537-BEN-JLB (S.D. Cal. Aug. 29, 2022), ECF No. 129-1 at 2-5.  Even identifying which sources are available does not necessarily mean that those sources are available to be accessed, read, and analyzed.  *Id*. at 5-10.  Once those sources are accessed, the process of putting together findings is also incredibly time consuming, comprising potentially hundreds or even thousands of hours depending on the inquiry.  *Id*. at 10-12.

Defendants have had just over a week to prepare this opposition brief.  Requiring Defendants to provide the kind of historical record expected under *Bruen* in the context of expedited briefing is an unreasonable burden.  Accordingly, if the Court were to conclude that Plaintiff's claims implicate the text of the Second Amendment (or defer ruling on that question)—and conclude that Plaintiff has satisfied the other *Winter* factors—the Court should provide the parties with additional time to conduct the research and briefing necessary to perform the historical analysis called for by *Bruen*, before the Court then issues its decision on this motion.

19

Defendants' Opposition to Mtn. For Prelim. Injunction (2:22-cv-06200-GW-AGR)

### B.   Plaintiff Has Not Established Irreparable Harm

Plaintiff has also failed to meet its burden to show that it is likely to suffer irreparable harm absent an injunction.  *See Winter*, 555 U.S. at 22.  Plaintiff asserts that, absent an injunction, AB 1621's regulation of certain CNC milling machines and requirements regarding precursor gun parts will irreparably harm Plaintiff by violating its Second Amendment rights.  *See* Mot. at 30.  However, as explained above, AB 1621 does not violate Plaintiff's Second Amendment rights, so no such harm will occur.

Nor has Plaintiff identified any harm independent of the alleged constitutional violation.  That is not surprising.  The harm from having to relinquish a CNC milling machine is not irreparable because it is possible to obtain a replacement machine if the prohibition is ultimately deemed unconstitutional.  So, too, may unserialized precursor gun parts be readily obtained if a constitutional violation is found.

Underscoring Plaintiff's failure to establish any actual harm is the lack of any declaration—from an attorney, plaintiff, or fact or expert witness—in support of the instant motion.[10]  This failure is not justified by urgency.  AB 1621 was enacted and took effect on June 30, 2022, nearly three months ago.  Plaintiff therefore had more than enough time to marshal declarations.  It could have, at minimum, submitted its own declaration testifying to how it would be harmed by the challenged laws.

Plaintiff has thus failed to show that it is likely to suffer any irreparable harm.

---

[10] Plaintiff's brief cites a handful of articles that were not provided to the Court or Defendants, most of which are not readily accessible.  *See* Mot. at 21, 22. Not only are these articles hearsay, but Plaintiff has provided no evidence, such as expert testimony, to assist the court's determination of how much weight they should be given.

### C.   The Balance of the Equities and Public Interest Weigh Strongly Against Injunctive Relief

Courts "pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24.  The balance of hardships and the public interest factors merge when the government is a party.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009).  Here, those factors weigh strongly against injunctive relief.

As explained above, Plaintiff will not be harmed by the Court's denial of injunctive relief because AB 1621 does not violate its Second Amendment rights. Moreover, the practical burden of the challenged provision on Plaintiff's ability to keep, obtain and use firearms for self-defense is small.  AB 1621 does not prevent anyone from purchasing federally regulated gun parts and assembling those parts at home.  In other words, Plaintiff will still have plenty of avenues, other than CNC milling machines, to obtain firearms for self-defense while this litigation proceeds.

On the other hand, any injunction against the State's enforcement of AB 1621 would gravely contravene the public interest.  AB 1621's prohibition on CNC milling machines is a key tool for addressing the recent "massive increase[] in the number of unserialized self-assembled ghost guns" in California that has contributed to "a surge in gun deaths."  A.B. 1621 § 1(a)(2), (4).  Unserialized ghost guns have "hampered the ability of law enforcement to trace crime guns and investigate firearm trafficking and other crimes."  *Id.* § 1(a).

As recounted in the AB 1621 legislative committee reports, the proliferation of ghost guns is an issue of grave public concern in California.  During the first half of 2021, the Los Angeles Police Department confiscated 863 ghost guns, representing a 300% increase over the previous year.  *See* Cal. Sen. Comm. on Public Safety, at p. 6 (June 7, 2022).[11]  Since 2017, the department has seen a 400% increase in

---

[11] Available online at https://leginfo.legislature.ca.gov/faces/billAnalysisClient.xhtml?bill_id=202120220AB1621# (last viewed Sept. 28, 2022).

1   ghost gun seizures.  *Id*.  In Oakland, 23% of the firearms seized by police officers

2   last year were ghost guns, and police in San Francisco seized 194 ghost guns as of

3   December 7, 2021, representing 20% of all guns seized by the city's police

4   department that year.  *Id*.  By way of comparison, not one firearm seized by the San

5   Francisco Police Department in 2015 was a ghost gun.  *Id*.  Overall, the California

6   Department of Justice's Bureau of Firearms (BOF) reports that the number of

7   unserialized guns recovered by California law enforcement agencies increased from

8   167 in 2016 to nearly 12,400 in 2021, a 74-fold increase.  Declaration of Salvador

9   Gonzalez (Gonzalez Decl.) at ¶ 17.

10       Just a few months ago in Sacramento, a man under a restraining order

11   prohibiting him from owning a firearm used an unregistered unserialized

12   homemade ghost gun to kill his three daughters, a chaperone, and himself, inside a

13   local church.  *Id*.  And ghost gun possession by prohibited persons is rapidly

14   increasing in California.  Gonzalez Decl. at ¶ 19.  BOF has recovered an increasing

15   number of ghost guns specifically from prohibited persons:  2 in 2015, 18 in 2016,

16   1 in 2017, 8 in 2018, 43 in 2019, 48 in 2020, and 60 in 2021.  *Id*.

17       An injunction restricting the ownership, sale, and possession of CNC milling

18   machines or preventing California from requiring gun parts to be serialized or sold

19   pursuant to a background check would undermine the State's vital public safety

20   effort to crack down on the proliferation of unserialized ghost guns.  *See* Gonzalez

21   Decl. ¶¶ 13-20. Indeed, "[a]ny time a State is enjoined by a court from effectuating

22   statutes enacted by representatives of its people, it suffers a form of irreparable

23   injury." *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers)

24   (quotation and citation omitted).  In short, the equities and public interest strongly

25   disfavor an injunction.

26       ///

27       ///

28

22

Defendants' Opposition to Mtn. For Prelim. Injunction (2:22-cv-06200-GW-AGR)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

Plaintiff's Motion for a Preliminary Injunction should be denied.

Dated:  October 3, 2022                         Respectfully submitted,

ROB BONTA
Attorney General of California
R. MATTHEW WISE
Supervising Deputy Attorney General

/s/ S. Clinton Woods
S. CLINTON WOODS
Deputy Attorney General
*Attorneys for Rob Bonta, in his
official capacity as California
Attorney General, and Blake Graham,
in his official capacity as Acting
Director of the Department of Justice
Bureau of Firearms*

23

# CERTIFICATE OF SERVICE

Case Name:   ***Defense Distributed, et al. v. Rob Bonta, et al.***          Case No.   **2:22-cv-06200-CAS-AGR**

I hereby certify that on <u>October 3, 2022</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

1. **DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

2. **DECLARATION OF S. CLINTON WOODS IN SUPPORT OF DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION WITH EXHIBITS A (INCLUDING JOINT MOTION AND STIPULATION REGARDING PLAINTIFFS' CLAIMS CHALLENGING SENATE BILL 1327) THROUGH B**

3. **DECLARATION OF SALVADOR GONZALEZ IN SUPPORT DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION WITH EXHIBIT A**

4. **DEFENDANT'S OPPOSITION TO PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>October 3, 2022</u>, at San Francisco, California.

| | |
|---|---|
| _____ | _____ |
| K. Figueroa-Lee | |
| Declarant | Signature |

SA2022303896
43420448.docx