Michael Reynolds (CA#174534)
Brett W. Johnson (CA#205988)
Cameron J. Schlagel (CA#320732)
SNELL & WILMER L.L.P.
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
Telephone: (714) 427-7000
Facsimile: (714) 427-7799
E-Mail: mreynolds@swlaw.com
bwjohnson@swlaw.com
cschlagel@swlaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEFENSE DISTRIBUTED, a Texas corporation,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT BONTA, in his official capacity as California Attorney General; BLAKE GRAHAM, in his official capacity as Acting Director of the California Bureau of Firearms,<br><br>Defendants. | Case No. 2:22-cv-06200-GW-AGR<br><br>**Plaintiff's Reply in Support of Motion for Preliminary Injunction; Supporting Memorandum of Points and Authorities**<br><br><u>Hearing Information</u><br><br>Date: October 24, 2022<br>Time: 8:30 a.m.<br>Ctrm: Via Zoom |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Plaintiff Defense Distributed ("<u>Plaintiff</u>")[1] hereby replies to the Opposition of Defendants Robert Bonta and Luis Lopez ("<u>Defendants</u>") to Plaintiff's Motion for a Preliminary Injunction (the "<u>Reply</u>"). This

---

[1] All capitalized terms bear the same meaning ascribed to them in the Motion.

Reply is based on this Notice, the attached Memorandum of Points and Authorities, and the concurrently filed Request for Judicial Notice.

Dated: October 7, 2022

SNELL & WILMER L.L.P.

By: _____
Michael Reynolds
Brett W. Johnson
Cameron J. Schlagel

Attorneys for Plaintiff
Defense Distributed

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Defendants attempt to moot Plaintiff's SB 1327 challenge, then pin their entire argument against Plaintiff's Second Amendment challenge to AB 1621 on an incorrect reading of the Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022). Defendants fail for at least two reasons:

1. Plaintiff has Article III standing to challenge SB 1327 because Defendants' representations in this case do not preclude the State from seeking attorneys' fees in a subsequent action. Defendants notably ignore Plaintiff's constitutional challenge on the merits, effectively conceding the point.

2. Defendants' entire argument against Plaintiff's Second Amendment challenge is premised on the erroneous assertion that *Bruen* imposes a threshold textual inquiry. But instead, the Supreme Court in *Bruen* unambiguously held that the Second Amendment analysis consists of a ***single*** step where the Court interprets the scope of the Second Amendment's textual guarantee, informed by history and tradition. Defendants do not even attempt to produce any historical evidence, once again effectively conceding Plaintiff's point.

Finally, Defendants' failure to contest meaningfully the "likelihood of success" and "balance of hardships" prongs amounts to a concession that Plaintiff will be irreparably harmed, an injunction is in the public interest, and should be granted as prayed.

## II.

## PLAINTIFF WILL SUCCEED ON THE MERITS

**A. SB 1327 is Facially Unconstitutional.**

1. <u>Plaintiff Has Article III Standing</u>.

Defendants' assertion that it will not seek attorneys' fees in connection with this Action does not deprive Plaintiff of Article III standing. A plaintiff bringing a

pre-enforcement facial challenge against a statute need not demonstrate to a certainty that it will be prosecuted under the statute to show injury, but only that it has "an actual and well-founded fear that the law will be enforced against" it. *Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 393 (1988). By filing this action, Plaintiff has engaged in a course of conduct affected with a constitutional interest and punished under SB 1327. *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298 (1979).

For context, SB 1327 authorizes the State to pursue a **separate** claim for attorneys' fees in a **new, subsequent** action. SB 1327 § 2. Despite Defendants' representations in this case, there is nothing that prevents the State from changing its mind and bringing a subsequent action against Plaintiff **in State court** to recover attorneys' fees. The State is not forever bound, by estoppel or otherwise, to the view of the law that it asserts in this litigation. *See Mitchell v. Washingtonville Cent. Sch. Dist.,* 190 F.3d 1, 6 (2d Cir.1999) (doctrine of "judicial estoppel" which prevents party from taking mutually exclusive positions in different litigation under some circumstances applies to assertions of factual positions); *Kucharek v. Hanaway*, 902 F.2d 513, 519 (7th Cir.1990) (interpretation of statute offered by Attorney General is not binding because he may "change his mind . . . and he may be replaced in office."). In view of this uncertainty, Defendants' representation cannot remove Plaintiff's reasonable fear that the State may later seek attorneys' fees against it. To hold otherwise would place Plaintiff's First Amendment rights at the sufferance of California's Attorney General. *See American Booksellers*, 484 U.S. at 395 ("as the Attorney General does not bind the state courts or local law enforcement authorities, we are unable to accept her interpretation of the law as authoritative").

Additionally, Plaintiff has third-party standing to maintain this action on behalf of its customers. A litigant can bring an action on behalf of its third-party customers if (1) the litigant has suffered an "injury in fact," thus giving it a "sufficiently concrete interest" in the outcome of the issue in dispute, (2) the litigant

has a close relation to the third party, and (3) there exists some hindrance to the third party's ability to protect his or her own interests. *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991); *Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 214 (4th Cir. 2020), as amended (Aug. 31, 2020) (recognizing that a firearms dealer established standing to bring a Second Amendment challenge on behalf of its customers).

Here, in addition to Plaintiff's own risk that the State will later enforce the attorneys' fees provision against it, SB 1327 plainly violates the constitutional rights of Plaintiff's customers. As intended, the legislation chills Plaintiff's customers, who are often individuals without resources to pursue costly litigation, from challenging unconstitutional firearm statutes in California on the front end. It then punishes them with the threat of enforcement if they dare risk bringing a challenge. This chilling effect strongly deters individuals from vindicating their constitutional rights.

The right to petition is "among the most precious liberties safeguarded by the Bill of Rights." *United Mine Workers v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967). To that end, courts have consistently held that the State cannot take retaliatory action against an individual for having exercised that right, nor can it take action designed to intimidate or chill the exercise of that right in the future. *See Harrison v. Springdale Water & Sewer Comm'n*, 780 F.2d 1422, 1427–28 (8th Cir. 1986) (collecting cases); *see also United States v. Jackson*, 390 U.S. 570, 582 (1968) (state objectives "cannot be pursued by means that needlessly chill the exercise of basic constitutional rights."). This Court should not entertain Defendants' promise of non-enforcement on a case-by-case basis, which is nothing more than a clever attempt to moot challenges to SB 1327 while maintaining the statute's intended chilling effect. *See* Mot. at 16–17 (the Legislature enacted SB 1327 as a "punitive deterrent").

2. <u>Defendants Effectively Concede SB 1327 is Unconstitutional</u>.

Defendants do not respond to Plaintiff's arguments that it will succeed on the merits of its constitutional challenges to SB 1327. They have, therefore, waived their arguments, effectively conceding that Plaintiff has a likelihood of success on the

1  merits. *See, e.g.*, *Jenkins v. County of Riverside,* 398 F.3d 1093, 1095 n. 4 (9th Cir. 2005) (plaintiff abandoned claims by not raising them in opposition to motion for summary judgment); *Allen v. Dollar Tree Stores, Inc.*, 475 F. App'x. 159, 159 (9th Cir. 2012) (affirming dismissal where plaintiff's "opposition to the motion to dismiss failed to respond to [the defendant's] argument").

## B. Plaintiff Will Establish that AB 1621 Violates the Second Amendment under the *Bruen* Analysis.

### 1. <u>Defendants' Proposed Two-Step Analysis is Erroneous</u>.

To circumvent *Bruen's* "history and tradition" test, Defendants artfully replace the two-step analysis that the Supreme Court expressly rejected in *Bruen* with a new two-step formulation. Defendants erroneously posit a threshold inquiry asking whether "the Second Amendment's plain text covers" the regulated conduct. Only if this threshold is passed, according to Defendants, does the Court analyze whether the challenged regulation is consistent with history and tradition. Opp'n at 11–12. This formulation, however, suffers at least two fundamental infirmities.

First, discerning the scope of the Second Amendment's textual guarantee necessarily involves analysis of history and tradition. *See Bruen*, 142 S. Ct. at 2126-27, 2130. Second, the State's proposed bifurcation of the "text and history" test improperly shifts the burden to the plaintiff.

*Bruen* simply does not impose any such artificial separation between the Second Amendment's "plain text" and the history and tradition that informs the meaning of that text. Though the Supreme Court did explain that "[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct," it did not subordinate the historical analysis as a contingent second step. *Id.* at 2131. Instead, courts must address a single question: "whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 2126 (emphasis added). To answer this

straightforward question, courts must apply a standard "rooted in the Second Amendment's text, as informed by history." *Id.* at 2127.

To this end, the Court in *Bruen* analogized the Second Amendment analysis with the First Amendment, explaining that in some First Amendment cases, the government's burden "includes showing whether expressive conduct falls outside of the category of protected speech," which requires the government to produce "*historical* evidence about the reach of the First Amendment's protections." *Id.* at 2130. Similarly, when litigants assert their Sixth Amendment right, courts consult "history to determine the scope of that right." *Id.* (citing *Giles v. California*, 554 U.S. 353, 358 (2008) ("admitting only those exceptions [to the Confrontation Clause] established at the time of the founding" (internal quotation marks omitted))).

This approach, where the interpretation of the Constitution's text is informed by history and tradition, is the standard that *Bruen* mandates. Thus, in cases invoking the Second Amendment's protections, "the government . . . must demonstrate that that the [challenged] regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.* at 2129–30. This inquiry is ***required*** to determine whether a challenged regulation falls within the "plain text" of the Second Amendment. *Id.* at 2130 (the purpose of the government's burden is to "inform the meaning of constitutional text"); *see also id.* at 2137 ("where a governmental practice has been open, widespread, and unchallenged since the early days of the Republic, the practice should guide our ***interpretation*** of an ambiguous constitutional provision" (emphasis added)); *D.C. v. Heller*, 554 U.S. 570, 605 (2008) (evidence of "how the Second Amendment was interpreted from immediately after its ratification through the end of the 19th century" represented a "critical tool of constitutional interpretation.").

PLAINTIFF'S REPLY IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:22-CV-06200-GW-AGR

Therefore, here, Defendants must demonstrate that the right to self-manufacture firearms, and to acquire the tools necessary to do so, does not fall within the scope of the Second Amendment as informed by the relevant history and tradition of firearms regulation in the United States. Defendants fail to meet this burden.

2. <u>Defendants Fail to Address the History and Tradition of the Right to Self-Manufacture Firearms in the United States.</u>

To properly understand the meaning of the Second Amendment's protections, Defendants must proffer evidence demonstrating "that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S.Ct. at 2126. However, Defendants do not even attempt to provide any such evidence to satisfy their burden.[2] *See* Opp'n at 18–19. This alone is fatal to their opposition, as they have not rebutted Plaintiff's evidence showing that it is likely to succeed on the merits. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Jenkins*, 398 F.3d at 1095 n. 4; *Allen*, 475 F. App'x. at 159.

Although Plaintiff has no obligation to supply a historical analysis of the right to privately manufacture firearms, Plaintiff's Motion undeniably establishes that there is no historical tradition of regulating, let alone prohibiting, the private manufacture of firearms in the United States. *See* Mot. at 20–25.[3] To the contrary, Plaintiff's analysis of the historical evidence demonstrates that the right to "keep and

---

[2] Defendants exaggerate their inability to develop an historical record, as they have been aware of this necessity since Plaintiff filed its original Complaint on August 31, 2022. In any event, additional time is unnecessary. A preliminary injunction is just that: preliminary. The Court can issue the requested interim relief and then revisit the question in the unlikely event Defendants are able to muster some historical evidence of properly analogous regulations.

[3] Contrary to Defendants' argument (Opp'n at 18 & n.9), courts may consider the publicly available sources supporting Plaintiff's historical analysis. *See Bruen*, 142 S. Ct. at 2138–56 (considering numerous historical sources such as books, law review articles, and historical regulations); *D.C. v. Heller*, 554 U.S. 570, 605 (2008) (finding that "examination of a variety of legal and other sources to determine the public understanding of a legal text in the period after its enactment or ratification . . . is a critical tool of constitutional interpretation.").

bear arms" necessarily includes the right to self-manufacture them and, inherently, to acquire the parts and tools necessary to do so.

### 3. The Second Amendment Protects the Private Possession and Transfer of CNC Milling Machines.

Because Defendants do not engage in any of the required historical analysis, they improperly conclude—with nothing more than a superficial glance—that "the right of the people to keep and bear Arms" does not apply to CNC milling machines, which Defendants contend are neither "bearable" nor "arms." Opp'n at 13–14. However, that painfully literal approach ignores the fundamental principal that when analyzing the text of an amendment, "certain unarticulated rights are implicit in enumerated guarantees . . . [and] fundamental rights, even though not expressly guaranteed, have been recognized by the Court as indispensable to the enjoyment of rights explicitly defined." *Richmond Newspapers v. Virginia,* 448 U.S. 555, 579–80 (1980). For instance, the "right of freedom of speech and press includes not only the right to utter or to print, but the right to distribute, the right to receive, the right to read and freedom of inquiry, freedom of thought, and freedom to teach . . . Without those peripheral rights the specific rights would be less secure." *Griswold v. Connecticut*, 381 U.S. 479, 482–83 (1965) (internal citations omitted).

In the same way, the Second Amendment's guarantee would mean nothing if the text did not protect the rights implicit within the right to keep and bear arms. For instance, while ammunition is not literally a bearable "arm", a ban on its sale, acquisition, or manufacture would render the right to both keep and bear arms as nothing more than a parchment barrier. *See Andrews v. State*, 50 Tenn. 165, 178 (1871) (finding that the "right to keep arms, necessarily involves the right to purchase them, to keep them in a state of efficiency for use, and to purchase and provide ammunition suitable for such arms").

Here too, a person could neither keep nor bear arms without a corresponding right to acquire the parts and machinery necessary to manufacture them for individual

self-defense—which itself is firmly rooted in the Second Amendment's text and the Nation's historical tradition of self-manufacture. *See McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 767 (2010) ("individual self-defense is 'the central component' of the Second Amendment right." (quoting *D.C. v. Heller*, 554 U.S. 570, 599 (2008)); *Ezell v. City of Chicago*, 651 F.3d 684, 704 ("[t]he right to possess firearms for protection implies a corresponding right to acquire and maintain proficiency in their use; the core right wouldn't mean much without the training and practice that make it effective."); *Ill. Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 930, 930 (N.D. Ill. 2014) ("the right to keep and bear arms for self-defense under the Second Amendment . . . must also include the right to acquire a firearm"). And because the right to self-manufacture is supported by the text of the Second Amendment, informed by this Nation's history and tradition—as Plaintiff shows in its Motion—the Second Amendment's guarantee protects the activities necessary to exercise this right.

Namely, this includes the ability to acquire the tools and parts necessary to engage in the self-manufacturing process. Because CNC milling machines undoubtedly fall into this category, their complete ban violates the Second Amendment. *Cf., e.g.*, *Edwards v. City of Coeur d'Alene*, 262 F.3d 856, 862 (9th Cir. 2001) (ban on wooden or plastic supports to signs carried during public assemblies violated First Amendment; although content neutral, ban failed to leave open alternative channels); *United Bhd. of Carpenters & Joiners of Am. Loc. 586 v. N.L.R.B.*, 540 F.3d 957, 969 (9th Cir. 2008) (similar effect).

    4.    <u>Defendants Mischaracterize AB 1621's Prohibitory Effect on Self-Manufacturing in California</u>.

Defendants attempt to deflect from their Second Amendment violations by asserting that despite AB 1621's prohibition on owning or selling CNC milling machines, no rights are burdened because "[i]ndividuals may still self-manufacture or assemble their own serialized firearms; they simply cannot use a CNC milling

machine with the primary purpose of assembling arms to do so." Opp'n at 16. However, California's ban on CNC milling machines is effectually a ban on home manufacture given the lack of alternative means of manufacture.

Contrary to Defendants' disingenuous argument, *see* Opp'n at 15, California's byzantine regulatory scheme effectively bans the sale or transfer of ***all*** firearm precursor parts, precluding self-manufacturing. California prohibits the sale and purchase of any precursor part that is not federally regulated. Presently, AR-15 receiver blanks are not "federally regulated," *see* 27 C.F.R. § 478.12(c) (example 4), and thus are banned under California law, *see* Cal. Penal Code §§ 16531 & 30400. Thus, the private manufacture of an AR-15 is effectively banned under California law. Moreover, there is no reasoned basis for distinguishing any frame or receiver blank from the AR-15 variant. Therefore, ***all*** firearm precursor parts that are not federally classified as a "frame or receiver" which ostensibly includes ***all*** standalone frame and receiver blanks, are banned under California law. AB 1621's statutory scheme[4] consequently operates as a ***complete*** ban on self-manufacturing firearms in California, effectively eviscerating the right of private manufacture. Additionally, Defendants falsely claim that these statutes impose only "minimal-to-nonexistent" burdens on Second Amendment rights, but the right to keep and bear arms is not subject to interest-balancing. *See Bruen*, 142 S.Ct. at 2127, 2131.

In sum, AB 1621 undoubtedly runs afoul of the Second Amendment, and Plaintiff is likely to succeed on the merits of its challenge.[5]

---

[4] Further, the shaky legal status of ATF's New Rule, which is the subject of multiple lawsuits and an injunction, could independently result in a complete ban on all so-called "firearm precursor parts." The New Rule has already been enjoined in one case and that injunction may be expanded nationally. *See* Op. and Order on Prelim. Inj. [ECF No. 56], *Vanderstok v. Garland*, Case No. 4:22-cv-00691-O (N.D. Tx. Sept. 2, 2022). If enjoined nationally, no "firearm precursor parts" would be federally regulated, making them illegal to buy, sell, or transfer in California. *See* Cal. Penal Code §§ 16531 & 30400; RJN, Ex. 1. That is equivalent to a total ban on these parts.

[5] Defendants incredibly suggest that that California is not enforcing its prohibitions against the self-manufacture of firearms, even though the State has spared no expense in its war against small firearm parts manufacturers and sellers. *See, e.g., California v. Blackhawk Mfg. Grp.*, San Francisco Sup. Ct., No. CGC-21-594577.

PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 2:22-CV-06200-GW-AGR

# III.

## PLAINTIFF SATISFIES THE REMAINING FACTORS

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). This is because "constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm." *Stormans, Inc. v. Stelecky*, 586 F.3d 1109, 1138 (9th Cir. 2009). Here, in the absence of injunctive relief, Plaintiff and its customers will continue to be deprived of their First, Second and Fourteenth Amendment rights by the regulatory schemes set forth in SB 1327 and AB 1621.

The balance of the hardships also tips in Plaintiff's favor. Defendants will not be harmed by "being enjoined from constitutional violations." *Haynes v. Office of the Att'y Gen. Phill Kline*, 298 F. Supp. 2d 1154, 1160 (D. Kan. Oct. 26, 2004). Plaintiff, on the other hand, will face further infringement of its constitutional rights in the absence of an injunction. Likewise, an injunction is in the public interest based on the well-established principle that enforcement of an unconstitutional law is against the public interest. *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005).

# IV.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that a preliminary injunction be entered enjoining enforcement of SB 1327 and AB 1621. Plaintiff further requests such other and additional relief as the Court deems just and proper.

Dated: October 7, 2022                         SNELL & WILMER L.L.P.

By: _____
Michael Reynolds
Brett W. Johnson
Cameron J. Schlagel
Attorneys for Plaintiff