# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 22-6200-GW-AGRx | Date | October 21, 2022 |
|---|---|---|---|
| Title | *Defense Distributed v. Robert Bonta, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:**      **IN CHAMBERS - TENTATIVE RULING ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION [14]**

Attached hereto is the Court's Tentative Ruling on Plaintiff's Motion [14] set for hearing on October 24, 2022 at 8:30 a.m.

: _____

Initials of Preparer      JG

***Defense Distributed v. Bonta, et al.***, Case No. 2:22-cv-06200-GW-(AGRx)
Tentative Ruling on Motion for Preliminary Injunction

## I.  Introduction/Background

On August 31, 2022, Defense Distributed ("DD") and the Second Amendment Foundation filed this lawsuit against Robert Bonta, in his official capacity as California Attorney General, and Luis Lopez, in his official capacity as Director of the California Bureau of Firearms (collectively, "Defendants").  The operative complaint in the action is now the First Amended Complaint for Declaratory and Injunctive Relief ("FAC"), with DD listed as the sole plaintiff in the action.  *See* Docket No. 13.  The FAC contains the following four claims for relief: 1) "42 U.S.C. § 1983 Action for Deprivation of Plaintiff's Rights under U.S. Const. amends. II and XIV;" 2) "42 U.S.C. § 1983 Action for Deprivation of Plaintiff's Rights under U.S. Const. amends. I and XIV;" 3) "42 U.S.C. § 1983 Action for Deprivation of Plaintiff's Right to Equal Protection under U.S. Const. amend. XIV;" and 4) "Supremacy Clause, U.S. Const. art. VI."

Generally speaking, this action concerns the California Legislature's passage of two provisions.  The first is Assembly Bill 1621, 2021-2022 Reg. Sess. ("AB 1621"), which amended or added multiple provisions of the Penal Code, and which took effect immediately upon the Governor's signature on June 30, 2022.  AB 1621, *inter alia*, prohibits any persons in the State of California – other than federally-licensed firearms manufacturers or importers – from using, possessing, selling, or transferring a computerized numerical code ("CNC") milling machine that has a sole or primary purpose of manufacturing firearms.[1]  AB 1621 § 25; Cal. Pen. Code § 29185.  The second item of legislation is Section 2 of Senate Bill 1327, 2021-2022 Reg. Sess. ("SB 1327") – enacted on July 22, 2022, and set to go into effect on January 1, 2023.  SB 1327, *inter alia*, makes anyone who seeks declaratory or injunctive relief to prevent enforcement of any statute, ordinance, rule, regulation or any other law that "regulates or restricts firearms" potentially "jointly and severally liable to pay the attorney's fees and costs of the prevailing party," with anyone seeking such declaratory or injunctive relief themselves not eligible for such prevailing-party status, and the government given up to three years after the conclusion of

---

[1] FAC ¶ 1 states that: "Defense Distributed sells a product called the Ghost Gunner [which] is a general-purpose Computerized Numerical Code milling machine."  *See* Docket No. 13.

the litigation in which to seek to recoup its fees if it is deemed the "prevailing party." *See* FAC ¶¶ 40, 59, 61-62, 64;[2] Cal. Civ. Proc. Code § 1021.11.

DD's theory on its Second Amendment claim is that "the text of the Second Amendment, which guarantees 'the right of the people to keep and bear Arms,' implicitly includes the right to acquire and manufacture firearms." FAC ¶ 76 (quoting U.S. Const. amend. II). DD alleges that "laws that restrict the tools and parts used for the self-manufacture of firearms are inconsistent with the Nation's historical tradition of firearms regulation," *id.* ¶ 36, and that the provisions of AB 1621 are just such laws. According to the FAC, "CNC milling machines are the modern-day manifestation of firearm milling technology, technology that has never before been regulated in American history." *Id.* ¶ 6. "Modern-day CNC milling is a standard machining process that employs computerized controls and rotating cutting tools to precisely remove material from a workpiece to produce a custom-designed part or product." *Id.* ¶ 10. DD sells, among other things, the "Ghost Gunner," a "general-purpose [CNC] milling machine . . . that gives purchasers the ability to complete unfinished frames and receivers for various types of firearms, including the AR-15, AR-308, M1911, and AK-47." *Id.* ¶ 1. "Because the materials provided by [DD] often do not have serial numbers and are not licensed with the federal government, they may be used to make what are popularly known by the moniker 'ghost guns.'" *Id.* ¶ 17.

On September 23, 2022, DD moved for a preliminary injunction, asking that the Court enjoin Defendants (and any others in active concern or participation with them) from enforcing California Penal Code sections 29180(f), 29185, 30400, 27530(a), and 18010(d), as enacted by AB 1621, and from enforcing Section 2 of SB 1327.

## II. Discussion

Under *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008), to obtain injunctive relief, DD must show that it "is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Id.* at 20; *see also Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 577 (9th Cir. 2014). In the wake of *Winter*, the

---

[2] The FAC's third and fourth causes of action are both tied to DD's challenge to SB 1327, not to the challenge to AB 1621 and the Penal Code provisions it added. *See* FAC ¶¶ 101-105, 107-108; *see also* Docket No. 14, at 2:11-18.

Ninth Circuit also still employs a lesser, "sliding-scale" approach.  Under that latter construct, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Arc of Cal. v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014) (omitting internal quotation marks) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)).[3]  "In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S 531, 542 (1987)).  "A preliminary injunction is an extraordinary remedy never awarded as of right." *Id.*

The Court will deny DD's motion.  In brief, the Court would find that, given the purpose of California's regulation, the "balance of equities" and "public interest" are not so one-sided in DD's favor as DD appears to believe – even if DD *was* able to demonstrate a likely violation of Second Amendment rights.  As to AB 1621 and the Penal Code provisions it introduced, the Court does not believe DD has demonstrated *at this time* a likelihood that it will prevail on the merits of its Second Amendment claim (or even that there are "serious questions going to the merits" on that issue) and, necessarily, it therefore has not demonstrated a likelihood of irreparable injury.  As to SB 1327, Defendants have made it clear that they have no intention of enforcing its provisions against DD – *i.e.*, seeking attorneys' fees and costs pursuant to that authority – in connection with this litigation.  Whatever that might or might not mean with regard to mootness and/or standing,

---

[3] It is not dispositive here, but this Court continues to believe that the Ninth Circuit's resurrection of its "sliding-scale" approach was problematic in the wake of *Winter*.  In *American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009), the Ninth Circuit made clear that the Supreme Court's *Winter* decision had announced the applicable standard governing injunctive relief: "To the extent that our cases have suggested a lesser standard [than that announced in *Winter*], they are no longer controlling, or even viable." *Id.* at 1052.  In making that announcement, the *American Trucking* panel cited directly, as an example of "a lesser standard," to a pin-cited page of its earlier decision in *Lands Council v. Martin*, 479 F.3d 636 (9th Cir. 2007), in which it had earlier set forth both the "possibility of irreparable injury" standard that *Winter* specifically addressed *and* the Ninth Circuit's sliding scale approach.  *See id.* at 639.  It is a commonplace observation that one three-judge panel of the Ninth Circuit – such as the panel in *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011), that seemingly first-revived the "sliding scale" approach – may not overrule an earlier three-judge panel in the absence of intervening controlling Supreme Court precedent.  *See United States v. Mayer*, 560 F.3d 948, 964 (9th Cir. 2009).  Although, on this point, the water is not just under-the-bridge but by now, likely far, far, out to sea, so far as this Court is aware the Ninth Circuit has never attempted to address this issue head-on.

that is not the issue here – for purposes of a preliminary injunction motion, it means that DD faces no likely irreparable harm/injury.

### A. AB 1621

DD's case for why AB 1621 and the Penal Code provisions it introduced in California violate the Second Amendment is based upon its belief that Defendants must demonstrate historical analogues that justify the type of regulation at-issue. Specifically, it believes that the Supreme Court's decision this year in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), requires that showing as part of the applicable analysis. Unfortunately for DD, the Court does not share that reading of *Bruen*.

In *Bruen*, the Supreme Court "h[e]ld that *when the Second Amendment's plain text covers an individual's conduct*, the Constitution presumptively protects that conduct." 142 S. Ct. 2111, 2126 (2022) (emphasis added). In *that* situation, if a government seeks to justify its regulation, it "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Id.*[4]

The Supreme Court, perhaps concerned that it had not already been clear enough (and/or that its interim discussion of analysis in *District of Columbia v. Heller*, 554 U.S. 570 (2008) had potentially distracted the reader), later "sum[med]" up its analysis, and "reiterate[d] that the standard for applying the Second Amendment is as follows: *When the Second Amendment's plain text covers an individual's conduct*, the Constitution presumptively protects that conduct. The government must *then* justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2129-30 (emphases added). Then, when actually applying the analysis it had deemed proper, the first thing *Bruen* undertook was to "turn to whether *the plain text of the Second Amendment* protects [the two individual plaintiffs'] proposed course of conduct – carrying handguns publicly for self-defense." *Id.* at 2134 (emphasis added). The

---

[4] No reasonable person would dispute that the type of regulation at issue in *Bruen* – a limitation on an individual's "right to carry handguns publicly for their self-defense" via issuance of "public-carry licenses only when an applicant demonstrates a special need for self-defense," 142 S. Ct. at 2122 – is completely different than what is at issue here. *See also District of Columbia v. Heller*, 554 U.S. 570, 628 (2008) (considering District of Columbia's handgun ban); *McDonald v. City of Chicago, Ill.*, 561 U.S. 742 (2010) (considering laws similar to District of Columbia's).

Court had "little difficulty concluding that it does," in part because "[n]othing in *the Second Amendment's text* draws a home/public distinction with respect to the right to keep and bear arms." *Id.* (emphasis added); *see also id.* at 2135 (concluding that "[t]he Second Amendment's plain text thus presumptively guarantees [the individual plaintiff's] a right to 'bear' arms in public for self-defense" before proceeding on to determine whether New York could show that its "proper-cause requirement" was "consistent with this Nation's historical tradition of firearm regulation"); *id.* at 2141 n.11 ("[*A]gain*, *because* the Second Amendment's bare text covers petitioners' public carry, the respondents here shoulder the burden of demonstrating that New York's proper-cause requirement is consistent with the Second Amendment's text and historical scope.") (emphases added).  Whatever else may be said of *Bruen*, these parts of the opinion are crystal-clear (as the Court's review of post-*Bruen* case law applying *Bruen* largely supports).[5]  *See also, e.g.*, *Nat'l Ass'n for Gun Rights, Inc. v. City of San Jose*, _ F.Supp.3d _, 2022 WL 3083715, *8 (N.D. Cal. Aug. 3, 2022) ("If the conduct at issue is covered by the text of the Second Amendment, the burden then shifts to the government to show why the regulation is consistent with the Nation's historical traditional of firearm regulation . . . ."); *Young v. Hawaii*, 45 F.4th 1087, 1092 (9th Cir. Aug. 19, 2022) (*en banc* Order) (O'Scannlain, J., dissenting); *Firearms Policy*

---

[5] Notwithstanding the clarity this Court perceives, even Defendants appear to be somewhat confused about *Bruen*'s import, at least in one instance.  They at least initially describe *Bruen* as having "held that courts must apply a standard 'rooted in the Second Amendment's text, as informed by history.'"  Docket No. 15, at 11:21-22 (quoting *Bruen*, 142 S. Ct. at 2127).  But the passage of *Bruen* they quote concerns *Bruen*'s description of what *Heller* "demands," not what *Bruen* itself "held" (which, as noted above, is plain-text analysis *first*, *then* history *if necessary*).  DD picks up on Defendants' mis-step, arguing in its Reply that "the Supreme Court in *Bruen* unambiguously held that the Second Amendment analysis consists of a single step where the Court interprets the scope of the Second Amendment's textual guarantee, informed by history and tradition."  Docket No. 16, at 3:14-17.  Again, unless the Court misunderstands the "plain text" meaning of "unambiguously," it cannot fathom how DD could reach this conclusion.  Certainly, DD's decision to omit the phrase "plain text" aids its ends, but the means are fatally-flawed.

  Yes, the Supreme Court did say – again, after *repeatedly* making clear that the "plain text" inquiry was a threshold inquiry – that "[t]he test that we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding."  DD mysteriously locates that quotation on page 2126 of *Bruen* (to pick just one, the word "understanding" appears nowhere on page 2126), *see* Docket No. 16, at 6:25-27, when it actually appears on page 2131, much later in the decision (a placement that actually means something, given the course/progress of *Bruen*'s analysis).  *Bruen* saying – on page 2131 – that it had to consider text and historical understanding reveals two things – 1) it actually *did* need to consider both "text" and "historical understanding" in that case given the nature of the regulation in question, and 2) the quoted sentence cannot possibly be understood as meaning that the "text" of the Second Amendment is informed by a "historical understanding," at least not without rendering the Supreme Court's repeated reference to "plain text" entirely meaningless.

*Coalition, Inc. v. McCraw*, _ F.Supp.3d _, 2022 WL 3656996, *8 (N.D. Tex. Aug. 25, 2022); *Rigby v. Jennings*, _ F.Supp.3d _, 2022 WL 4448220, *5 (D. Del. Sept. 23, 2022); *United States v. Price*, _ F.Supp.3d _, 2022 WL 6968457, *2, 6 (S.D. W. Va. Oct. 12, 2022).[6]  DD's reading of the decision to the contrary, *see* Docket No. 16, at 6:22-25 ("Though the Supreme Court did explain that '[w]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct,' it did not subordinate the historical analysis as a contingent second step.") (quoting *Bruen*, 142 S. Ct. at 2131), is not possible to square with these passages.

Though it leads with a recognition of the primacy of *Bruen*'s "plain text" point, *see* Docket No. 14, at 19:20-21, DD seeks in its opening brief to jump ahead in the analysis to a historical/tradition assessment (and to jump ahead in *Bruen* to that decision's discussion of how to conduct such an assessment).  *See id.* at 19:23-24:27.  But it has effectively attempted to avoid the necessary threshold consideration – does the "Second Amendment's plain text" cover the issue here?  No, it plainly does not.  AB 1621 has nothing to do with "keep[ing]" or "bear[ing]" arms.  *See Bruen*, 142 S. Ct. at 2127 (noting that *Heller* employed a "textual analysis" to focus on the Second Amendment language's "normal and ordinary meaning" as a guarantee of an individual right "to possess and carry weapons") (quoting *Heller*, 554 U.S. at 576-77, 592); *id.* at 2134 ("*Heller* further confirmed that the right to "bear arms" refers to the right to "wear, bear, or carry . . . upon the person or in the clothing or in a pocket . . . .").

"To determine whether the Second Amendment's plain text covers an individual's conduct, courts must first identify and delineate the specific course of conduct at issue, which in *Bruen* was 'carrying handguns publicly for self-defense.'"  *Nat'l Ass'n for Gun Rights*, 2022 WL 3083715, at *8 (quoting *Bruen*, 142 S. Ct. at 2134).  Under DD's own characterization of the Penal Code provisions introduced via AB 1621, what is at issue here

---

[6] The Third Circuit Court of Appeal's recent statement that "the Supreme Court [in *Bruen*] recently instructed us to closely scrutinize *all* gun restrictions for a historically grounded justification," *Frein v. Pennsylvania State Police*, 47 F.4th 247, 254 (3d Cir. 2022) (emphasis in original), is, quite simply, wrong. That is, unless *Bruen* means something other than what it quite-plainly says (although, considering that what we deal with here is the Second Amendment, perhaps this is no longer accepted as a persuasive criticism).  As a "pin-cite" (to three pages of text) for its attempt to reflect the law, the *Frein* decision cites only to that portion of *Bruen* that begins *after Bruen* has – *repeatedly* – made it clear that a "plain text" assessment comes *before* any historical analysis is necessary.  *See id.* (citing *Bruen*, 142 S. Ct. at 2131-33).

is a ban on "self-manufacture of firearms" and a prohibition on "the sale of the tools and parts necessary to complete the self-manufacturing process."  Docket No. 14, at 1:26-2:1; *see also id.* at 9:8-9 (referring to a "Second Amendment right [of law-abiding citizens] to craft and build their own personal firearms").  Try as you might, you will not find a discussion of those concerns (or any such "right(s)") in the "plain text" of the Second Amendment.  *See* U.S. Const. amend. II ("A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.").[7]

DD "implicitly" recognizes this, because it argues that the Second Amendment's recognition of a right "to keep and bear arms" "implicitly includes the right to acquire and manufacture firearms" and "necessarily involves the right to purchase" arms.  Docket No. 14, at 19:4-6 (internal quotation marks omitted) (quoting *Andrews v. State*, 50 Tenn. 165, 178 (1871)).  DD seemingly perceives a penumbra.  *See* Docket No. 16, at 9:9-11 (criticizing Defendants' "painfully literal approach [because it] ignores the fundamental principal [*sic*] that when analyzing the text of an amendment, 'certain unarticulated rights are implicit in enumerated guarantees'") (quoting *Richmond Newspapers v. Virginia*, 448 U.S. 555, 579-80 (1980)).  But whether or not it does so, its analysis is quite-clearly not a "plain text" analysis, required under *Bruen*.[8]  Even beyond that point, DD has not pointed to any clear regulation in AB 1621 of any perceived rights concerning the acquisition or purchase of "arms."

Much as DD would like to move history and tradition forward in the course of

---

[7] Query how – if DD was correct about how the Second Amendment's plain text should be read and *Bruen* should be applied in the history of self-manufacture – *any* serialization requirement of firearms could be Constitutional.

[8] The Court does not find the recent conclusion to the contrary by a District of Delaware court, relying entirely (at least so far as citations go) only on a pre-*Bruen* Seventh Circuit decision dealing with implied rights to acquire- and maintain-proficiency in the use of firearms, to be persuasive.  *See Rigby v. Jennings*, _ F.Supp.3d _, 2022 WL 4448220, *8 (D. Del. Sept. 23, 2022) ("Similarly, here, the right to keep and bear arms implies a corresponding right to manufacture arms.  Indeed, the right to keep and bear arms would be meaningless if no individual or entity could manufacture a firearm.  Thus, if possessing untraceable firearms is protected by the Second Amendment, then so too is manufacturing them.") (citing *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011)).  Defendants' observation about DD's motion is a point that could equally be made about *Rigby* – "[DD] produces no authority that the right to own a machine used to manufacture one's own arms is encompassed by the plain text of the Second Amendment, which says nothing about 'self-manufacture or assembly' of one's own firearms."  Docket No. 15, at 14:23-25.

relevant analysis under *Bruen*, its attempt does not survive a careful, and intellectually-honest, reading of that decision.  In the end, as Defendants argue, "under *Bruen*, the burden does not shift to the government to support the regulations with a historical analysis, and [DD's] Second Amendment challenge" – at least for purposes of this motion – "fails at the threshold stage of the inquiry."  Docket No. 15, at 17:28-18:2.[9]

DD – and apparently certain other courts – would like to treat the Supreme Court's *Bruen* opinion as a "word salad," choosing an ingredient from one side of the "plate" and an entirely-separate ingredient from the other, until there is nothing left whatsoever other than an entirely-bulletproof and unrestrained Second Amendment.[10]  That is not how precedent works; it is not even how language works (let alone salad, in most instances).  Under the analytical framework established in *Bruen*, DD has not demonstrated at this time either a "likelihood" of prevailing on the merits or even a "reasonable probability of success" in connection with its case against AB 1621.  *See* Docket No. 14, at 18:15-21.  If there is some other non-*Bruen* framework that could give life to its challenge to AB 1621, DD has not yet identified/defined it.  With no demonstration of a likely Second Amendment violation at this point, no irreparable harm is likely.  DD therefore cannot satisfy either of the two (arguably-) appropriate tests for preliminary injunctive relief, and its motion insofar as AB 1621 is concerned is denied.

**B.  <u>SB 1327</u>**

DD challenges SB 1327 on right-to-petition, substantive due process, equal protection, and Supremacy Clause grounds.  As to this aspect of DD's case and its request for a preliminary injunction, the Court has no need or cause to consider whether or not Section 2 of SB 1327 is constitutionally-infirm/whether DD has a likelihood of prevailing upon that point.[11]  This is because DD has to be able to demonstrate "immediate threatened

---

[9] Even if DD were somehow able to clear the threshold consideration made clear in *Bruen*, it filed this case on August 31, 2022, the FAC on September 21, 2022, and this motion on September 23, 2022.  In order to even be able to assess whether or not DD could demonstrate a "likelihood" of prevailing on the merits – again, under a hypothetical manner of analysis that most-definitely does *not* apply under *Bruen* – there is no possibility this Court would expect Defendants to be able to present the type of historical analysis conducted in *Bruen* on 31 days' notice (or even 54 days' notice).  DD obtaining a preliminary injunction – at least as to AB 1621 – on October 24, 2022, was wishful-thinking, at-best, for at least that reason.

[10] Such approach would contrary to the actual language of the Second Amendment which provides that "A *well-regulated* militia, being necessary to the security of a free State . . . . [emphasis added]."

[11] The Court would note that, but for Defendants' commitment not to pursue attorneys' fees or costs from

harm/injury" in order to warrant a preliminary injunction. *See Caribbean Marine Servs. Co., Inc. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (noting that, in demonstrating irreparable injury, "[a] plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief"); *see also Midgett v. Tri-County Metro. Transp. Dist. of Or.*, 254 F.3d 846, 850-51 (9th Cir. 2001) ("This court already has rejected the argument that a determination that a plaintiff has suffered sufficient injury to support standing logically requires the court to conclude that the plaintiff necessarily has demonstrated a sufficient fear of immediate and substantial injury to warrant an injunction.").

Defendants have made clear that they "have informed [DD] that they will not seek attorneys' fees or costs from [DD] or its attorneys pursuant to [Section 2 of SB 1327] in connection with this action." Docket No. 15, at 1:9-11; *see also id.* at 9:19-23; Declaration of S. Clinton Woods in Support of Defendants' Opposition to Motion for Preliminary Injunction, Docket No. 15-1, ¶¶ 3-5 & Exh. A. Given Defendants' statements in documents filed with the Court, it is almost certain that any later court considering a contrary plan would hold Defendants to their word under principles of judicial estoppel. *See, e.g.*, *Bock v. Washington*, 33 F.4th 1139, 1145 (9th Cir. 2022) (observing that "[w]hen 'a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position'" and noting that one factor to consider in deciding whether to apply the doctrine is whether "'the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped'") (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-51 (2001)); *United States v. Kim*, 806 F.3d 1161, 1167 (9th Cir. 2015) ("[T]he judicial estoppel doctrine . . . prevents the offending party from gaining an unfair advantage by his litigation tactics."); *Wagner v. Prof'l Eng'rs in Cal. Gov't*, 354 F.3d 1036, 1047 n.10 (9th Cir. 2004) (approving of application of judicial estoppel in connection with litigant's "strategic decision"). As a result, the Court does not believe that DD has demonstrated the threat of immediate injury that is necessary

---

DD or its attorneys pursuant to Section 2 of SB 1327 in connection with this action, it would entertain reservations as to SB 1327's impact on DD's First Amendment rights.

to issue the extraordinary remedy of a preliminary injunction.  *See, e.g.*, *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) ("This Court has ruled that '[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction.  A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief.'") (quoting *Caribbean Marine*, 844 F.2d at 674).

Potentially-realizing that Defendants' firm offer does not aid its present motion, in its Reply DD immediately attempts – indeed, in the first line of text in the Reply – to cast the maneuver solely in "mootness" terms and, just a few lines later, via standing principles. *See* Docket No. 16, at 3:4 ("Defendants attempt to moot Plaintiff's SB 1327 challenge . . . ."); *id.* at 3:8-10 ("Plaintiff has Article III standing to challenge SB 1327 because Defendants' representations in this case do not preclude the State from seeking attorneys' fees in a subsequent action.").  Whatever Defendants' position might mean with respect to any mootness/standing considerations is not an issue this Court needs to decide on this DD-initiated motion for a preliminary injunction, notwithstanding Defendants' attempt to also argue that point in opposition to the motion.

Because DD cannot show it will likely suffer irreparable harm or injury because of Section 2 of SB 1327, it cannot meet the applicable preliminary injunction test(s).  The motion is therefore denied in this respect.

## III. <u>Conclusion</u>

Whatever the above discussion might mean for the future of DD's case, a preliminary injunction is an "extraordinary remedy."  For the reasons set forth above, DD simply has not made a case for its issuance here.  The Court therefore denies the motion.